UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNA BARBOSA,<br><br>           Plaintiff,<br><br>   v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security<br><br>           Defendant. | 1:13-cv-410  GSA<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

**INTRODUCTION**

Plaintiff, Joanna Barbosa ("Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act.[1] The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[2]

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedures, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this action.

[2] The parties consented to the jurisdiction of the United States Magistrate Judge. (*See* Docs. 5 & 14).

1

# BACKGROUND AND PRIOR PROCEEDINGS[3]

Plaintiff first applied for SSI on January 14, 2010, alleging disability beginning August 1, 2008, due to a mood disorder. AR 105, 123-126. At the time of her application, she was twenty years old and had completed the eleventh grade. Plaintiff had never worked.

Plaintiff's SSI application was denied initially, and upon reconsideration. AR 39-52, 62-66, 71-75. She subsequently requested a hearing by an Administrative Law Judge ("ALJ"). AR 77-81. ALJ Laura Speck Havens held a hearing on August 3, 2011. AR 39-52. On August 17, 2011, the ALJ issued an unfavorable decision. AR 23-33. The Appeals Council denied review, and the ALJ's decision became the final decision of the Commissioner resulting in the filing of the instant appeal. AR 1-3.

# THE DISABILITY DETERMINATION PROCESS

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. § 404.1520(a)-(f). The ALJ proceeds step by step in order and stops upon reaching a dispositive finding that the claimant is disabled or not disabled. 20 C.F.R. § 404.1520(a)(4). Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period o f alleged disability; (2) whether the claimant had medically-determinable "severe" impairments;[4] (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. 404, Subpart P, Appendix 1; (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work;[5] and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the

---

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.
[4] "Severe" simply means that the impairment significantly limits the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c).
[5] Residual functional capacity captures what a claimant "can still do despite [his] limitations." 20 C.F.R. § 404.1545. "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

regional and national level.  20 C.F.R. § 404.1520(a)-(f).

## I. Summary of the ALJ's Findings

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard.  AR 23-34.  More particularly, the ALJ found that Plaintiff not engaged in substantial activity since January 4, 2010.  AR 25.  Further, the ALJ identified depression and borderline intellectual functioning as severe impairments.  AR 25.  Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or exceed any of the listing impairments. AR 25-27.

Based on a review of the entire record, the ALJ determined that Plaintiff has the RFC to perform a full range of work at all exertional levels, but noted the following nonexertional limitations: 1) a poor ability to handle stress, 2) a fair ability to deal with others, and 3) that Plaintiff should be limited to simple and routine tasks. AR 32.  The ALJ defined poor as "seriously limited but not precluded," and fair as "limited but satisfactory."  AR 32.  After noting that Plaintiff had no past relevant work, the ALJ considered Plaintiff's RFC in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2 ("the grids"), and determined that Plaintiff could perform jobs that exist in the national economy.  AR 32-33.

Here, Plaintiff argues that the ALJ erred by: 1) failing to incorporate all of the findings made by Dr. Ewing into the RFC; 2) failing to include her own finding of moderate limitations with regard to concentration, persistence, or pace, and social functioning in formulating Plaintiff's RFC; and 3) applying the grids rather than eliciting the testimony of a vocational expert (VE) to assess the vocational impact of Ms. Barbosa's nonexertional limitations . (Docs. 12 and 18).

**A. Medical Record**

The entire medical record was reviewed by the Court.  AR 177-300.  Plaintiff received treatment and services from a number of mental health professionals.  However, at issue in this

appeal are the opinions of three doctors that are discussed in more detail below.

      **a)**     *Consultative Examiner, Dr. Troy Ewing, Psy.D*

On April 23, 2010, Dr. Troy Ewing, Psy.D., a consultative examiner, performed a comprehensive psychological evaluation at the request of the state agency. AR 244-250. After meeting with Plaintiff, Dr. Ewing diagnosed Plaintiff with a Major Depressive Disorder, Recurrent Moderate (AR 247), and opined that, "[o]verall, Plaintiff's prognosis is "fair," however, her "mental health symptoms may be chronic." AR 248. He also noted that Plaintiff "has a poor ability to handle normal work related stress from a competitive work environment," and that her "[m]ental health symptoms may impact [her] ability to handle work related stress." AR 248. Specifically, Dr. Ewing noted that Plaintiff :

* Is able to adequately perform one or two step simple repetitive tasks and may have some difficulty with complex tasks as there may be some intellectual deficits present;

* Has a fair ability to accept instructions from supervisors and interact with coworkers and the public. Depression may limit extent of social engagement. . . ;

* Has a fair ability to maintain regular attendance in the workplace as mental health symptoms may impact attendance;

* Has a fair ability to complete a normal workday or workweek without interruptions from a psychiatric condition as mental health symptoms may impact attendance; and

* Has a poor ability to handle normal work related stress from a competitive work environment. Mental health symptoms may impact claimant's ability to handle work related stress.

AR 248.

      **b)**     *State Agency Physicians, Drs. E. Murillo and Dr. Kevin Gregg, M.D.*

Two state agency doctors reviewed the medical evidence and completed a Mental RFC Assessment Form and a Psychiatric Review Technique Form ("PRTF"). AR 251-253, 254-264. On May 24, 2010, E. Murillo, M.D., diagnosed "MDD Disorder, recurrent," and formulated a mental RFC. AR 257. He noted moderate limitations in maintaining concentration, persistence

4

or pace; mild limitations in restriction of activities of daily living; and mild difficulties in maintaining social functioning.  AR 262. He also found there was "insufficient evidence" of repeated episodes of decompensation.  *Id*.

With regard to Plaintiff's memory, concentration, and persistence, Dr. Murillo opined that Ms. Barbosa is moderately limited in her ability to: 1) understand, remember, and carry out detailed instructions; 2) maintain attention and concentration for extended periods; and 3) interact appropriately with the general public. AR 251-252. He specifically commented on the following:

> [T]he claimant is able to understand, remember and carry out [simple routine, repetitive tasks] on a sustained basis, in 2 hour increments with normal braks (sic); may have moderate limitations in performing detailed and/or technical instructions…
> The claimant is able to relate to co-workers and supervisors, but should be limited in public contact; the claimant can adapt to common stressors and changes associated with an unskilled work environment.
> AR 253.

Dr. Kevin Gregg, M.D., completed a Case Analysis on October 4, 2010. AR 299-300. He recommended that Dr. Murillo's of findings of simple, repetitive tasks with limited public contact, be adopted.  AR 300.

## **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether (1) it is supported by substantial evidence, and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

 "Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."  *Id.*  Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  *Id*.

# **DISCUSSION**

**I.    Dr. Ewings's Limitations and the ALJ's Formulation of Plaintiff's RFC.**

When formulating the RFC, the ALJ gave Dr. Ewing and the state agency's physicians' significant weight AR 31. As previously noted, the ALJ determined that Plaintiff has the RFC to perform a full range of work at all exertional levels, except that she: 1) was limited to simple, routine tasks; 2) had a poor (meaning seriously limited but not precluding) ability to handle stress; and 3) had a fair (meaning seriously limited but satisfactory) ability to deal with others.  AR 27.

Plaintiff argues that the ALJ erred in formulating the RFC because it did not account for Plaintiff's social limitations.  (Doc. 12-1, pgs. 16-21).  Specifically, the ALJ's finding that Plaintiff had a fair/satisfactory ability to deal with others is inconsistent with Dr. Ewing's limitation of "fair ability to accept instructions from supervisors and interact with coworkers and the public," as well as the state agency's doctors' finding that Plaintiff had a moderate ability to interact appropriately with the general public and "should be limited in public contact." AR 248, 252-253, 300. Plaintiff contends this finding is also inconsistent with the ALJ's finding that Plaintiff had moderate limitations in social functioning. AR 25.  Defendant contends that the ALJ did not err in including the consultative examiners' opinions that Plaintiff should be limited in public contact because the ALJ can synthesize findings based on the entirety of the record, and give more weight to evidence that is consistent with the record as a whole and supported by objective clinical evidence.  (Doc. 17, pg. 11).

Upon a review of the record, the Court is not persuaded by Defendant's argument because the ALJ gave Drs. Ewing, Murillo, and Gregg's opinions significant weight, yet there is an inconsistency between the three that the ALJ never addresses.  On the one hand, Dr. Ewing indicates that Plaintiff has a fair ability to interact with the public.  AR 248.  While on the other

hand, the state agency doctors indicated that Plaintiff had a moderate ability to interact with the public and opined she should be limited in public contact. AR 251-253, 300. The ALJ never addresses this inconsistency when formulating the RFC.

A claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a); 20 C.F.R. § 416.945(1). The assessment of a RFC must be "based on all the relevant evidence in [the claimant's] case record." *Id*. Furthermore, if the RFC assessment conflicts with a medical source opinion, the ALJ must explain why the opinion was not adopted. SSR 96-8. When an examining physician's opinion is controverted by another doctor's opinion, the examining physician's opinion may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. *Lester v. Chater*, 81 F.3d at 830–31 (9th Cir. 1995). Likewise, "[t]he findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings." *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir.1996). Thus, to the extent the ALJ may have disagreed with certain aspects of any of the opinions, the ALJ was required, at a minimum, to resolve the inconsistency by offering specific and legitimate reasons supported by substantial evidence in the record for rejecting those opinions. Here, the ALJ failed to do so. This is particularly troubling because the ALJ herself noted a moderate limitation in social functioning earlier in the decision, but later did not address the limitation regarding social functioning in the order. AR 25-26. The case will be remanded to reconcile this inconsistency between the doctors' opinions, and allow the ALJ to incorporate any identified finding regarding a social functioning limitation into the RFC if necessary.

Plaintiff also argues that the ALJ failed to include Dr. Ewing's findings regarding attendance and difficulty completing a normal workweek. In particular, Plaintiff contends that the ALJ's RFC of Plaintiff's seriously limited, but not precluded ability, to handle stress (AR 27) is not consistent with Dr. Ewing's limitation of a poor ability to handle normal work related stress

from a competitive work environment. AR 248; (Doc. 12-1, pg. 22). The Court disagrees with Plaintiff's argument. Here, the ALJ's limitation regarding Plaintiff's seriously limited, but not precluded, ability to deal with stress, is consistent with Dr. Ewing's finding.

## II.    The ALJ Properly Incorporated the Moderate Limitation of Concentration, Persistence or Pace into the RFC.

Plaintiff argues that the ALJ stated in her decision that the Plaintiff had moderate difficulties with concentration, persistence, or pace yet failed to incorporate these findings into her RFC. (Doc. 12-1, pg. 23-25). Defendant contends that Dr. Murillo was the doctor who identified the moderate difficulties in this area, yet he still concluded that Plaintiff retained the RFC to perform simple, repetitive and routine tasks. As such, the ALJ's RFC formulation is consistent with Dr. Murillo's assessment. (Doc. 17, pg. 12-13).

A review of the record reveals that Dr. Murillo was indeed the doctor who assessed a moderate limitation in this area and still found Plaintiff could perform simple repetitive tasks. AR 251-252. Dr. Gregg agreed with this assessment. AR 300. Similarly, Dr. Ewing's report found Plaintiff is able to adequately perform one or two step simple repetitive tasks and may have some difficulty with complex tasks as there may be some intellectual deficits present. AR 248. Thus, the ALJ's RFC limiting Plaintiff to simple, repetitive tasks, adequately is supported by substantial evidence because it adequately addresses Plaintiff's moderate limitation of concentration, persistence, or pace.

## III.    The ALJ's Use of the Grids Was Improper.

Plaintiff argues that the ALJ's use of the grids at step five was inappropriate in light of Plaintiff's non-exertional limitations. (Doc. 12-1, at 12-21; Doc. 18, at 2-3). Defendant argues that the ALJ's finding at step five is supported by substantial evidence because the Plaintiff's non-exertional limitation to simple, routine work is consistent with unskilled work, for which the grids expressly provide. (Doc. 17 at 7-9). A review of the record shows the application of the

grids is not appropriate in this case.

The claimant has the initial burden of proving the existence of a disability within the meaning of the Social Security Act. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). The claimant establishes a prima facie case of disability by showing that a physical or mental impairment prevents him or her from engaging in his or her previous occupation. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). However, once the claimant establishes a prima facie case of disability, the burden of going forward with the evidence shifts to the Secretary. *Hammock v. Bowen*, 867 F.2d 1209 (9th Cir. 1989). The Secretary bears the burden of establishing the existence of alternative jobs available to the claimant, given his or her age, education, and medical-vocational background. In an appropriate case, the Secretary may meet this burden through application of the medical-vocational guidelines set forth in the regulations.[1] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2 ("Appendix 2"); *Heckler v. Campbell*, 461 U.S. 458 (1983); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983). If the guidelines do not accurately describe a claimant's limitations, the Secretary may not rely on them alone to show availability of jobs for the claimant. *Desrosiers v. Secretary*, 846 F.2d 573 (9th Cir. 1988).

When the grids do not match the claimant's qualifications, the ALJ can either (1) use the grids as a framework and make a determination of what work exists that the claimant can perform, or (2) rely on a vocational expert when the claimant has significant non-exertional limitations. *Hoopai v. Asture*, 499 F.3d 1071 (9th Cir. 2007). However, the mere allegation of the presence of a non-exertional impairment is not sufficient to preclude application of the guidelines. Such non-exertional impairment must be found to significantly limit the range of work permitted by a

---

[1] For any given combination of factors (residual functional capacity, age, education, and work experience), the guidelines direct a conclusion of disability or nondisability when they accurately describe a claimant's particular limitations.

claimant's exertional limitations before the Secretary will be required to obtain expert vocational testimony regarding the availability of other work. *See, e.g., Polny v. Bowen,* 864 F.2d 661 (9th Cir. 1988); *Burkhart v. Bowen*, 856 F.2d 1335 (9th Cir. 1988); *Razey v. Heckler*, 785 F.2d 1426, 1430 (9th Cir. 1986) (modified 794 F.2d 1348 (1986)); and *Perminter v. Heckler*, 765 F.2d 870 (9th Cir. 1985).

With regard to the application the grids in this case, the ALJ stated the following:

> The claimant's ability to perform work at all exertional levels has been compromised by nonexertional limitations. However, these limitations have little or no effect on the occupational base of unskilled work at all exertional levels. While the claimant has a poor ability to handle stress, this activity by itself is not something required of competitive, remunerative, unskilled work. It is not precluded, per the definition in this decision, the undersigned finds that these limitations are accounted for by limiting the claimant to simple, routine tasks. A person limited to performing simple, routine tasks would not be prohibited from performing unskilled work. Finally, while responding appropriately to supervisor and co-workers is required by competitive, remunerative unskilled work, the claimant retains a satisfactory ability to deal with others. Therefore, there is not a substantial loss in the ability to perform this activity. A finding of "not disabled" is therefore appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines.

AR 33.

Here, the Court agrees with the ALJ's analysis that Plaintiff's non-exertional limitation to simple, routine work is consistent with unskilled work. Unskilled work is defined as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). It includes "handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment [is] needed." *Id.* Thus, this type of work, by definition, accommodates a limitation to simple, repetitive tasks. *See, Quiana La Nay Chase v. Colvin*, 2014 WL 4544096, *14 (N.D.Cal. Sept. 12, 2014) citing, *Lopez v. Astrue,* 2011 WL 3206958, at *9

(N.D. Cal. July 27, 2011).

However, Plaintiff argues that the grids do not account for Plaintiff's poor ability to handle stress, which the ALJ herself defines as a "serious but not precluding" limitation. In making the determination to apply the grids, the ALJ found that Plaintiff's poor ability to handle stress, would not be implicated in competitive, remunerative, unskilled work. This is inconsistent with the language of SSR 85-15. This rule addresses mental impairments and stress and provides that the basic mental demands of unskilled work includes the ability (on a substantial basis) to respond appropriately to … usual work situations *and* to deal with changes in a routine work setting. SSR 85-15.[2] "A substantial loss of ability to meet any of these basis work-related

---

[2] Social Security Ruling 85-15 discusses mental impairments and stress as follows:

> Where a person's only impairment is mental, is not of listing severity, but does prevent the person from meeting the mental demands of past relevant work and prevents transferability of acquired work skills, the final consideration is whether the person can be expected to perform unskilled work. The basic mental demands of competitive, remunerative, unskilled work included the ability (on a substantial basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, co-workers, and usual work situations; and to deal with a changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base.
>
> Determining whether these individuals will be able to adapt to the demands or "stress" of the workplace is often extremely difficult. This section is not intended to set out any presumptive limitations for disorders, but to emphasize the importance of thoroughness in evaluation in an individualized basis.
>
> The reaction to the demands of work (stress) is highly individualized, and mental illness is characterized by adverse responses to seemingly trivial circumstances. The mentally impaired may cease to function effectively when facing such demands as getting to work regularly, having their performance supervised, and remaining in the workplace for a full day. Thus, the mentally impaired may have difficulty meeting the requirements of even so-called "low-stress" jobs.
>
> Because the responses to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job.

SSR 85-15.

11

activities would severely limit the potential occupational base." SSR 85-15.

Here, the ALJ did not adequately consider this portion of SSR 85-15 in her analysis, as her discussion omits this portion of the rule. Plaintiff's poor ability to handle stress is sufficiently severe to limit the occupational base and preclude use of the grids in this case. Thus, a VE's testimony is necessary to assess the impact of this non-exertional limitation on Plaintiff's ability to work. As such, the case will be remanded so the ALJ can take the testimony of a vocational expert ('VE") to assess this issue. Moreover, as previously outlined in this order, the ALJ shall also review the medical evidence related to Plaintiff's social functioning, make the necessary findings, and include any appropriate limitation into the hypotheticals proposed to the VE. *See Cooper v. Sullivan,* 880 F.2d. 1152, 1555 (9th cir. 1989) (citing 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00 (e)(1) ". . . where a claimant suffers solely from a nonexertional impairment, the grids do not resolve the question,[ ] other testimony is required."); *Poly,* 864 F.2d at 663-664 (grids inapplicable because, although claimant was "capable of performing a wide range of jobs," he could not perform ones that were "highly stressful," that "require[d] compression of complex instruction," or "dealing with the public"); *Burkhart*, 856 F.2d at 1341 & n. 4 (grids inapplicable because they did not account for claimant's need to avoid stressful environments, his inability to regularly use his hands, or his vision problems); *Holohan v. Massanari*, 246 F.3d 1195, 1208-1209 (9th Cir. 2001) (ALJ committed legal error by relying on grids where ALJ found that claimant had no severe physical impairments and her only severe impairments were psychiatric).

Given the above, the ALJ's application of the grids at step five is not supported by substantial evidence. The Court will remand the case so that the ALJ can adequately assess Plaintiff's limited ability to handle stress and address any social limitation if the ALJ determines

it is appropriate to do so.

## **REMAND**

Section 405(g) of Title 42 of the United States Code provides: "the court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." In social security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate." *Id*. (citation omitted); *see also Varney v. Secretary of Health & Human Serv*., 859 F.2d 1396, 1399 (9th Cir.1988) "Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed."

Here, the Court finds that remand for further proceedings is required to allow the ALJ to properly review all of the medical evidence related to Plaintiff's psychological impairments consistent with this opinion and take the testimony of a VE to properly complete step five of the sequential analysis.

///

///

///

///

///

///

///

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence. Accordingly, this Court GRANTS Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff, Joanna Barbosa , and against Defendant Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **September 30, 2014**          **/s/ Gary S. Austin**
                                         UNITED STATES MAGISTRATE JUDGE